| | AUSA: | JOHN ENGSTROM | Telephone: (313) 226-9571 |
|---|---|---|---|
| AO 106 (Rev. 04/10) Application for a Search Warrant | Special Agent: | SHANIKA SANDERS | Telephone: (313) 226-2573 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of | ) | Case: 2:17-mc-50641-1 |
| *(Briefly describe the property to be searched* | ) | Judge: Friedman, Bernard A. |
| *or identify the person by name and address)* | ) Case No. | Filed: 05-04-2017 |
| Information associated with edrearobinson@aol.com and | ) | IN RE: SEALED MATTER (MAW) |
| huhduda@aol.com that is stored at a premises controlled | ) | |
| by AOL, Inc. | ) | |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____Eastern_____ District of _____Michigan_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1347 | HEALTH CARE FRAUD |
| 18 U.S.C. § 1349 | ATTEMPT AND CONSPIRACY |

The application is based on these facts:

See attached AFFIDAVIT.

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent, Shanika Sanders, Department of Labor-OIG
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: May 4, 2017

*Judge's signature*

City and state: Detroit, Michigan

Hon. Elizabeth Stafford   U. S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Shanika Sanders, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by AOL, Inc. ("AOL"), an e-mail provider headquartered at 22000 AOL Way, Dulles, VA 20166.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require AOL to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Department of Labor, Office of the Inspector General (DOL-OIG) and have been since January 2016.  As a Special Agent in the DOL-OIG, I have received general law enforcement training at the Federal Law Enforcement Training Center, as well as specialized training on the

subjects of fraud, waste and abuse, and I have been personally involved in investigations concerning health care fraud, and methods used to finance and conceal the profits of those operations. I have interviewed employees of medical clinics. I have investigated and conducted surveillance on doctors as well. I have consulted with agents and officers of federal, state, and local agencies in order to gain an understanding of current trends in health care fraud. I am familiar with the Medicare program, as well as federal healthcare fraud and laws. I am currently assigned to the Detroit division of the DOL-OIG and my duties include investigating health care fraud. I am assigned to an investigation pertaining to health care fraud by William A. Robinson and others not named. The information herein is known to me through personal knowledge and investigation and/or from review of documents and interviews of people having direct knowledge of these events.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## SUMMARY OF REQUEST

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Health Care Fraud, 18 U.S.C. § 1347 (fraud) and Attempt and Conspiracy 18 U.S.C. § 1349 (conspiracy),

have been committed by William A. Robinson (ROBINSON) and others known and unknown.  Specifically, ROBINSON caused numerous false claims for hearing aids, services, and products to be submitted to Blue Cross Blue Shield of Michigan (BCBSM) and paid for between 2010 through 2016.   In commission of the fraudulent scheme, which is further described below, the following two email addresses were utilized to advance the scheme: **edrearobinson@aol.com** and **huhduda@aol.com**.  Because these email addresses were used to further fraudulent schemes, this application seeks permission to search them for evidence of these crimes as described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## **VIOLATION STATUTES**

6.     Title 18 U.S.C. § 1347, prohibits health care fraud:  Whoever knowingly and     willfully executes, or attempts to execute, a scheme or artifice—

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both.

7.     Title 18 U.S.C. § 1349 provides that any person who attempts or conspires to commit health care fraud shall be subject to the same penalties as those proscribed in 18 U.S.C. § 1347.

8.     Title 18 U.S.C. § 24(b) defines a "health care benefit program" as, among other things, "any public or private plan . . . affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service, for which payment may be made under the plan."

4

## PROBABLE CAUSE

9.    This investigation was predicated on a referral in 2016 by BCBSM of

allegations that a hearing aid provider, William A. Robinson, Inc., was billing

healthcare plans for hearing devices and services that were never provided to the

plan member.  BCBSM's initial investigation reported that ROBINSON was

fraudulently billing multiple insurance providers, including public and private

union healthcare funds.  BCBSM's internal investigation also revealed that

ROBINSON was not securing proper medical clearance or evaluations prior to

dispensing and billing for hearing aids.  Since 2000 there have been 42 complaints

made to the BCBSM anti-fraud hotline regarding ROBINSON and companies he

controls.  Victims include members of the federal employee health program (non-

OWCP), FCA US, LLC, State of Michigan, Michigan Public School Employee

Retiree Plan, UAW Retiree Medical Benefit Trust, and Medicare.

10.    According to the website of the Department of Licensing and

Regulatory Affairs (LARA) for the State of Michigan, ROBINSON obtained a

license as a hearing aid dealer in the state of Michigan.  ROBINSON's hearing aid

dealer license is currently active and set to expire on November 30, 2017.

11.    According to the LARA website, ROBINSON's listed business

address is 8033 E. 10 Mile Rd, Suite106, Centerline, Michigan.

12.     According to the LARA website, William A. Robinson, Inc. is listed as a domestic for-profit corporation.  It was incorporated on November 11, 1992 and is still active.  ROBINSON is listed as the registered agent.

13.     On December 6, 2010, ROBINSON provided BCBSM a BCBSM Medicare Advantage PPO Provider Agreement and Practitioner Attachment on behalf of William A. Robinson, Inc.  ROBINSON signed the certification, indicating that he agreed, to be legally bound by the terms and conditions of the agreement.  ROBINSON notated that he was a hearing aid dealer on the Practitioner Attachment.  By signing this certification, ROBINSON agreed that he would not knowingly present or cause to be presented a false or fraudulent claim for payment to Medicare or BCBSM, and would not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

14.     On April 22, 2016, Joyce Arnold, group representative, provided BCBSM a Participation Agreement, for Hear Here Corporation.  Here Hear has a location in Taylor, and also in Shelby Township.  By signing the certification statement, Arnold also agreed that she would not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare or BCBSM, and would not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

6

15.    As recent as December 07, 2016, ROBINSON's business location in Centerline was named Hear Hear, to match the names of the previously mentioned business locations associated with ROBINSON.

16.    In order to receive reimbursement from BCBSM, a provider must submit a claim, either electronically or using a form, containing the required information appropriately identifying the provider, beneficiary, and services rendered, among other things.  The provider can elect to receive reimbursement via electronic funds transfer (EFT) or by check.  Based on this investigation, Edrea Robinson-Mann, daughter of ROBINSON, and Joyce Arnold have been identified as the biller/claims rep for William A. Robinson, Inc., now dba Hear Here Corporation.  Based on this investigation, the email address **edrearobinson@aol.com** has been used to submit billing information to BCBSM.

17.    During an interview with BCBSM investigators, LE (age 77 at the time of interview) acknowledged that ROBINSON came to her home on January 7, 2014 and conducted a hearing examination.  Later, she stated that ROBINSON telephoned her and her hearing aids were ready.  She stated that she declined his offer of hearing aids and never received hearing aids from ROBINSON.  LE claims she did not sign a contract to allow billing for hearing aids.

18.    During that same interview with the BCBSM investigators, LE's husband "CE" (age 93 at time of the interview) stated he was home when his wife

7

(LE) was examined by ROBINSON, but that he remained upstairs and was never examined.  He never received hearing aids.

19.     On January 7, 2014, ROBINSON submitted claims to Blue Care Network (BCN) for members CE and LE. ROBINSON sought reimbursement for in-the-ear hearing aids, audiometric testing, hearing aid assessment and conformity evaluations.  BCN is a nonprofit health maintenance organization owned by BCBSM.  BCN paid $1,222 for each claim.

20.     After an anti-fraud hotline complaint was filed, BCBSM investigators met with the family members of LL (age 81 at the time of the interview).  During an interview with BCBSM investigators, family members of LL stated that ROBINSON visited LL's senior apartment building in the spring of 2015, without any advance notice.  He tested LL's hearing.  LL did not sign a contract to allow billing for the hearing aids, nor did she receive hearing aids.  On May 5, 2015, ROBINSON submitted claims to BCBSM on behalf of member LL.  ROBINSON sought reimbursement for in-the-ear hearing aids, audiometric testing, hearing aid assessment and conformity evaluations. BCBSM paid $1,728 for the hearing aids, testing, and evaluation.  A BCBSM fraud investigator told the Affiant that he subsequently reviewed LL's patient chart and observed notes in the patient chart stating that LL refused to accept the hearing aids.  BCBSM investigators stated the claims paid on behalf of LL were later reversed.

8

21.    A daughter of CW contacted BCBSM via the anti-fraud hotline to report a false claim.  In a subsequent interview with a BCBSM investigator, CW's daughter stated that her mother, age 84 at the time of the interview, received a flyer from Robinson Hearing in the mail in September 2015.  However, according to the daughter, her mother never met with ROBINSON and never received hearing aids from ROBINSON.  CW's daughter stated that CW is never left alone because of Alzheimer's and other health problems, and claimed that she is therefore aware of all of CW's doctor visits.  On September 3 and 4, 2015, ROBINSON submitted claims to BCBSM on behalf of member CW.  BCBSM paid $2,685 for hearing aids, audiometric testing, hearing aid assessment and conformity evaluation.  When ROBINSON was later asked about these claims by BCBSM investigators, ROBINSON maintained that he did in fact see CW, but acknowledged that his patient file did not contain a signed contract for hearing aids.  He characterized his paperwork as "sloppy."

22.    On November 7, 2012, ROBINSON submitted claims to BCBSM on behalf of HR for in-the-ear hearing aids, audiometric testing, hearing aid assessment and conformity evaluations.  BCBSM paid ROBINSON $1,723 based upon these claims.  HR was 94 years old when her sister filed the complaint.  After the complaint was filed, HR received hearing aids in the mail, even though she had never requested or agreed upon hearing aids. When ROBINSON was later

9

interviewed about this, he could not produce a file or any paperwork to justify the claims he submitted.

23.    Since 2000, at least 30 complaints have been filed with BCBSM Corporate and Financial Investigations division complaining about hearing aids that were billed to BCBSM, but were not received by the member.  Because of member complaints, BCBSM periodically sent letters to ROBINSON advising him to follow the guidelines in the BCBSM manual.  BCBSM records show that ROBINSON received such letter six times.

## BCBSM BILLING

24.    Data received from BCBSM in, or around, the end of 2016 showed that between the years 2010 through the first half of 2016, services amounting to an approximate total of $7,911,546 were billed to BCBSM by ROBINSON for services which were purportedly performed by ROBINSON or businesses affiliated with ROBINSON.  For these billings, William A. Robinson, Inc., now doing business as Hear Here Corporation, received an approximate total payment of $5,185,393.06 from BCBSM.  Detailed analysis of this data revealed facts including, but not limited to, the following:

        a.  For the aforementioned total billed services, ROBINSON billed BCBSM for a total of 3,388 BCBSM members.

b.  The three most common programs billed to BCBSM, for services
    performed by ROBINSON, are as follows:

    i.  UAW Retiree Medical Benefits Trust (URMBT) Chrysler:
        The billing of this program resulted in total claims to
        BCBSM of $2,104,870 and total reimbursement of
        $1,557,211.

    ii.  URMBT GM:  The billing of this program resulted in total
         claims to BCBS of $2,160,332 and total reimbursement of
         $1,520,890.45.

    iii.  Michigan Public School Employees Retirement System
          (MSPERS):  The billing of this program resulted in total
          claims to BCBSM of $702,394 and total reimbursement of
          $482,855.71.

## INTERVIEW OF ROBINSON

25.     On January 12, 2016, ROBINSON was interviewed by investigators
of BCBSM regarding complaints involving five BCBSM members (see paragraphs
17-22 above).

26.     When asked by BCBSM investigators to provide the medical file for
HR (see paragraph #22), ROBINSON was unable to produce a file, or any
paperwork to justify the claims submitted to and paid by BCBSM.  During the

11

interview, ROBINSON stated that he was aware of a pattern of "sloppy" recordkeeping.

27.     During the same interview, ROBINSON provided a medical file for CE (see paragraph #18) dated for 2007, to BCBSM investigators.  On the chart it stated "did not test" and "not interested in test".  There was no signature, or any evidence to show that CE was seen by ROBINSON in 2014.  When asked about the claim submitted for CE in 2014, ROBINSON stated that upon review it should not have been filed.  When asked if this claim would be considered a false claim, ROBINSON stated he did not do it intentionally.

28.     During the interview, ROBINSON stated his daughter, Edrea Mann, submits the claims as the biller, however he was responsible for the claims filed. When asked what should happen to someone who has "sloppy" recordkeeping, ROBINSON stated they should be "put on suspension or something".

## INTERVIEWS OF FORMER EMPLOYEES

29.     On July 28, 2016, the Affiant and a BCBSM investigator interviewed a former employee (hereafter Employee 1) of William A. Robinson, Inc. Employee 1 was approached by Mrs. Glenda Robinson to help with organizational tasks at William A. Robinson, Inc., located at 8033 E. 10 Mile Road, Centerline,

Michigan, in early 2014. Employee 1 stated s/he was terminated by ROBINSON in August 2015, but a reason for termination was never provided.

30.     Employee 1 stated that employees of ROBINSON would go to local nursing homes and arrange to offer hearing services, which included cleaning hearing aids, and providing hearing tests to the residents.

31.     When asked about the billing of insurance companies, Employee 1 stated ROBINSON predominately focused attention on BCBSM members because of the large amount of benefit paid by BCBSM.

32.     When asked about employee practices, Employee 1 stated employees were conducting services they were not trained to do, such as adjusting hearing aids. Review of the LARA website, confirmed the employee was not in fact licensed to complete the task.

33.     Employee 1 stated that ROBINSON hired a doctor to sign required medical clearances. A medical clearance signed by a practicing physician is a prerequisite for receiving benefits for first time hearing aids with BCBSM. Employee 1 stated if the doctor was unavailable to sign a clearance, a nurse would forge the doctor's signature.

34.     When asked about billing practices, Employee 1 stated s/he would send the requested patient information via email to Edrea (see paragraph #16), in order to complete the billing for ROBINSON. Employee 1 stated that conformity

13

tests, which occur during a follow up visit to verify that the patient received the prescribed hearing aid, and to evaluate its effectiveness were always billed.  In fact, according to Employee 1, these tests were never performed.  Claims data provided by BCBSM demonstrate that conformity tests were usually billed as performed on the same day as the hearing test, and not on a follow up date.  A conformity test, by its nature, must be conducted sometime after the patient has had an opportunity to use the hearing aid for a period of time.  These records corroborate Employee 1's assertion that ROBINSON was fraudulently billing for "conformity tests" that were not performed.

35.    Employee 1 also stated if hearing aids were returned by a patient or never actually delivered to the patient, ROBINSON still billed the insurance company.  ROBINSON would return the hearing aid to the supplier for a refund or credit, however the insurance company would not be notified to reverse the claim.

36.    On November 14, 2016, the Affiant and a BCBSM investigator interviewed a former employee (hereafter Employee 2) of ROBINSON.  Employee 2 was interviewed and hired to work at the Taylor, Michigan location.  Employee 2 started at the Taylor location in February of 2016, and was terminated May of 2016 for breach of contract.

37.    Employee 2 was fired by Joyce Arnold, not the actual manager of the Taylor location.  Employee 2 did not understand why s/he was fired, or why s/he

14

was fired by an employee in North Carolina that s/he never met.  When Employee 2 asked Arnold why s/he was fired, Arnold stated she believed Employee 2 was working for both Hear Here and a former employer.  Employee 2 stated that was not the case.

38.    Employee 2 stated that Hear Here Corporation contacted the Taylor location with interest in buying the company.  Employee 2 did not understand why a North Carolina company was interested in a hearing dealer in Michigan.  However, Employee 2 stated the Taylor location was sold, and Mrs. Glenda Robinson sold her location in Shelby Township as well.  Later, ROBINSON's location in Centerline was also renamed as Here Hear.  Further investigation shows that Edrea Mann, the daughter of ROBINSON is the owner of Hear Here Corporation.

39.    Employee 2 stated that s/he was one of two audiologists that rotated between the three locations.  Employee 2 also stated an employee named "Tina" was tasked with dispersing hearing aids on behalf of Robinson.  Employee 2 stated that Tina was not professionally qualified to disperse hearing aids.  Tina was not a trainee and had not received proper training.  Review of the LARA website confirmed that Tina was not in fact licensed to complete the task.

15

### Use of E-mail Addresses to Further the Crimes

40.     Your Affiant has learned that the aforementioned e-mail account has been used in furtherance of the health care fraud and health care fraud conspiracy, described herein.  Specifically, BCBSM received billing sheets from an employee at William A. Robinson, Inc. now dba Hear Here Corporation at **edrearobinson@aol.com**.

41.     Employee 1 stated that Edrea received billing information via email at **edrearobinson@aol.com**.

42.     On December 6, 2010, ROBINSON signed a BCBSM Medicare Advantage PPO Provider document that stated **huhduda@aol.com** was a contact email for the business.  On January 29, 2014, Aaron Robinson, ROBINSON'S son, signed a BCBSM New Group Enrollment form stating **huhduda@aol.com** was the preferred email contact for the business.

43.     Based upon my professional experience investigating health care fraud and related offenses, as a general rule, billers communicate with providers via electronic mail and telephone. It is likely that billing documents, medical records, and other financial and business records, will be located on AOL's servers.  According to the Department of Community Health's website, "In general, medical records with respect to competent adults should be kept at least seven (7) years."

16

## BACKGROUND CONCERNING E-MAIL

44.     On January 18, 2017, the government sent AOL a request for preservation of records pursuant to 18 U.S.C. § 2703(f), asking that AOL confidentially preserve the following specific email addresses for 90 days: **edrearobinson@aol.com** and **huhduda@aol.com**.

45.     In general, an e-mail that is sent to an AOL subscriber is stored in the subscriber's "mail box" on AOL's servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on AOL's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on AOL's servers for a certain period of time.

46.     In my training and experience, I have learned that AOL provides a variety of on-line services, including electronic mail ("e-mail") access, to **aol.com**, like the e-mail account listed in Attachment A. Subscribers obtain an account by registering with AOL. During the registration process, AOL asks subscribers to provide basic personal information. Therefore, the computers of AOL are likely to contain stored electronic communications (including retrieved and non-retrieved e-mail for AOL subscribers) and information concerning subscribers and their use of AOL. AOL services, such as account access information, e-mail transaction information, and account application information. In my training and experience,

17

such information may constitute evidence of the crimes under investigation
because the information can be used to identify the account's user or users.

47.     An AOL subscriber can also store with the provider files in addition to
e-mails, such as address books, contact or buddy lists, calendar data, pictures
(other than ones attached to e-mails), and other files, on servers maintained and/or
owned by AOL.  In my training and experience, evidence of who was using an e-
mail account may be found in address books, contact or buddy lists, e-mail in the
account, and attachments to e-mails, including pictures and files.

48.     In my training and experience, e-mail providers generally ask their
subscribers to provide certain personal identifying information when registering for
an e-mail account.  Such information can include the subscriber's full name,
physical address, telephone numbers and other identifiers, alternative e-mail
addresses, and, for paying subscribers, means and source of payment (including
any credit or bank account number).  In my training and experience, such
information may constitute evidence of the crimes under investigation because the
information can be used to identify the account's user or users.

49.     In my training and experience, e-mail providers typically retain
certain transactional information about the creation and use of each account on
their systems.  This information can include the date on which the account was
created, the length of service, records of log-in (i.e., session) times and durations,

18

the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

50.    In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

# CONCLUSION

51.     Based upon my investigation, the Affiant believe there is probable cause to conclude that ROBINSON, now dba Hear Here Corporation, has committed and conspired to commit healthcare fraud since as early as 2000. Furthermore, there is probable cause to believe ROBINSON, currently dba as Here Hear Corporation, has used or caused to be used the following AOL email addresses, **edrearobinson@aol.com** and **huhduda@aol.com**, in the commission of said offenses.

52.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on AOL who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

53.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of the warrants.

54.     I further request that the Court order AOL not to notify any person, including the subscribers or customers of the accounts listed in Attachment A, of the existence of the search warrants until further order of the Court. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as

20

the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested warrants relate to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested warrants will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

Respectfully submitted,

Special Agent SHANIKA SANDERS
Department of Labor-OIG

Sworn to before me and signed in my
presence and/or by reliable electronic means.

HON. ELIZABETH STAFFORD
United States Magistrate Judge

DATED:   May 4, 2017

21

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information associated with

**edrearobinson@aol.com** and **huhduda@aol.com** that is stored at premises

controlled by AOL, a company that accepts service of legal process at 22000 AOL

Way, Dulles, Virginia 20166.

**ATTACHMENT B**
**Particular Things to be Seized**

I.      **Information to be disclosed by AOL, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence and instrumentalities of violations of Title 18 USC Sections 1347 (Health Care Fraud) and 1349 (Conspiracy to Commit Health Care Fraud), those violations involving William A. Robinson, and Hear Here Corporation and occurring after **January 1, 2010** including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      Billing matters;

b.      Payments to or from Blue Cross Blue shield and other insurance companies;

c.      Insurance rules, regulations, requirements, and/or audits;

d.      Recruitment of retired beneficiaries;

e.      Insurance claims, billing; and

2

f.      Information relating to who created, used, or communicated with the

account, including records about their identities and whereabouts.

| | AUSA: | JOHN ENGSTROM | Telephone: (313) 226-9571 |
|---|---|---|---|
| AO 93 (Rev. 11/13) Search and Seizure Warrant | Special Agent: | SHANIKA SANDERS | Telephone: (313) 226-2573 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of | ) | Case: 2:17-mc-50641-1 |
| *(Briefly describe the property to be searched* | ) | Judge: Friedman, Bernard A. |
| *or identify the person by name and address)* | )   Case No. | Filed: 05-04-2017 |
| Information associated with edrearobinson@aol.com and | ) | IN RE: SEALED MATTER (MAW) |
| huhduda@aol.com that is stored at a premises controlled | ) | |
| by AOL, Inc. | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

       An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

       I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

       **YOU ARE COMMANDED** to execute this warrant on or before   May 17, 2017          *(not to exceed 14 days)*
       ☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

       Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

       The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
                                                                           *(United States Magistrate Judge)*

       ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
       ☑ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      May 4, 2017   4:28 pm                    *Elizabeth A. Stafford*
                        _____              _____
                                                                        *Judge's signature*

City and state:   Detroit, Michigan                         Hon. Elizabeth Stafford   U. S. Magistrate Judge
                _____              _____
                                                                    *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|
| |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*